## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jennifer Peltier,                    Case No. _____

     Plaintiff,

vs.                                  **COMPLAINT**
                                     **JURY TRIAL DEMANDED**
Planned Parenthood North Central States,

     Defendant.

Plaintiff Jennifer Peltier, by and through her attorneys, Fabian May & Anderson, PLLP, alleges and states as follows:

### INTRODUCTORY SUMMARY

1. This is an action under the Minnesota Human Rights Act and the Americans with Disabilities Act arising from Defendant Planned Parenthood North Central States' (PPNCS) failure to provide reasonable accommodations for Plaintiff Jennifer Peltier's disability, its discriminatory selection of her for layoff and constructive discharge because of her disability, and its retaliation against her for engaging in protected activity, including requesting accommodations.

2. Despite notice of Peltier's disabilities and medical documentation supporting a temporary reduced schedule and gradual return to full-time work, PPNCS refused to accommodate, issued discipline premised on disability-related attendance, and then selected Peltier for layoff within weeks of her accommodation requests, later claiming her inclusion was a "mistake."

1

3.      Peltier accordingly seeks all available relief, including damages for wage and benefit loss, compensatory and punitive damages, and attorney's fees and costs, as permitted by statute.

## JURISDICTION

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case arises under the laws of the United States, specifically the ADA, 42 U.S.C. § 12101 *et seq.*

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the federal claims that they form part of the same case or controversy.

## VENUE

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this district, and Defendant resides and conducts business in this district.

## CONDITIONS PRECEDENT

7.      Plaintiff filed a Charge of Discrimination with the Minnesota Department of Human Rights (MDHR) on July 22, 2025.

8.      The MDHR timely cross-filed the Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

9.      The EEOC issued a notice of right to sue dated April 10, 2026.

10.     On April 20, 2026, Plaintiff notified the MDHR, pursuant to Minn. Stat. § 363A.33, subd. 1(3), that she intended to bring this civil action.

2

**PARTIES**

11.  Peltier resides in Cottage Grove, Minnesota. Peltier is a citizen of Minnesota.

12.  PPNCS is a Minnesota non-profit corporation. PPNCS's principal place of business located in St. Paul, Minnesota. PPNCS is a citizen of Minnesota.

**FACTS RELEVANT TO ALL COUNTS**

13.  Peltier was employed by PPNCS as a full-time, fully remote Patient Services Associate I from August 2024 through June 14, 2025.

14.  In this role, Peltier was responsible for customer service tasks such as assisting patients with registration, financial resources, appointment scheduling, handling general patient inquiries, and routing medical inquiries to the correct medical staff.

15.  Peltier lives with Sjogrens Syndrome and Autonomic Dysfunction. When active, these conditions materially and substantially limit several major life activities, including, but not limited to sleeping, concentrating, thinking, communicating, walking, standing, balance, and the operation of major bodily functions including, but not limited to, neurological and cardiovascular functions.

16.  Peltier disclosed her disabilities to PPNCS during the application and interview process and explained that it was imperative that her work, as Patient Services Associate I, be fully remote due to her medical conditions.

17.  At orientation, Peltier also disclosed her conditions to manager Lauren Johnson, informing Johnson she needed to pause after climbing stairs because of a heart condition.

18.    Peltier also disclosed her disabilities and disability-related symptoms on various occasions to her direct supervisor, manager Emily Grote.

19.    As her symptoms worsened in early 2025, Peltier requested personal leave as a disability accommodation.

20.    Peltier contacted PPNCS's HR, Melynda Harjes, about her need for personal leave and then submitted supporting paperwork from her medical provider.

21.    Because Peltier was not yet FMLA-eligible, PPNCS offered Peltier personal leave, with Harjes stating PPNCS could approve Peltier's leave for 30 days, extendable up to 60 with a doctor's note.

22.    Peltier began leave on or about March 10, 2025.

23.    On March 31, 2025, Peltier's physician completed an ADA accommodation form recommending additional personal leave as a reasonable accommodation for Peltier's medical condition.

24.    On April 2, 2025, Peltier submitted an ADA accommodation request seeking extended personal leave due to her medical condition.

25.    PPNCS approved an additional 30 days of continuous leave from April 7 to May 7, 2025.

26.    On April 29, 2025, Peltier's medical provider documented continued symptoms, extended leave through May 12, 2025, and recommended a gradual return to full-time work over two weeks starting May 12, with Peltier working three days per week at 5.5 hours per day and two 15-minute breaks per day.

27.    On April 30, 2025, Peltier began inquiring about her doctor's recommended accommodations.

28.    On May 2, 2025, PPNCS, through Grote, stated it would not accommodate additional leave at that time.

29.    On May 4, 2025, Grote told Peltier she must work a full shift starting May 5, notwithstanding Peltier's approved leave through May 7.

30.    Grote also told Peltier that for disciplinary purposes, working less than eight hours would be treated the same as not coming in at all.

31.    Under pressure of that directive, Peltier attempted to return full time on May 5, 2025, but was unable to complete the shift due to her medical conditions.

32.    Peltier contacted PPNCS's HR and Johnson, who told her she could take the rest of the day off and return to work on May 8.

33.    On May 6, 2025, Peltier again requested a temporary reduced schedule consistent with her doctor's recommendation.

34.    On May 7, 2025, Peltier was seen in an emergency room because working on May 5 exacerbated her medical conditions.

35.    On May 8, 2025, Peltier worked a full day but was unable to get out of bed for days afterward.

36.    On May 12, 2025,  Peltier again attempted to work an 8-hour day but was only able to work approximately four hours due to her worsening condition.

37.    That same day, Peltier submitted a follow-up email about her request for a reduced schedule accommodation, noting its time-sensitive nature.

38.     Peltier then missed work on May 14, because she knew she could not work a full 8-hour shift and because Grote had told her that starting late or leaving early would be treated as an attendance occurrence the same as missing a full day.

39.     On May 15, 2025, Peltier worked a partial shift.

40.     The same day, Grote issued a verbal warning about Peltier's attendance, stating Peltier had three attendance occurrences in the last six months, including May 12, May 14, and May 15.

41.     The attendance occurrences were directly related to Peltier's documented medical limitations and PPNCS's refusal to implement her requested disability accommodations.

42.     In an email memorializing the warning, Grote emphasized that PPNCS would not accommodate a part-time schedule and expected full-time attendance, with any deviations subject to corrective action.

43.     On May 28, 2025, PPNCS convened a meeting with Peltier, her union representative Stephanie Karcher, HR representative Melynda Harjes, and accommodations staff Evelyn Sariba, to discuss Peltier's accommodation request.

44.     During the meeting, Sariba stated leadership denied the part-time schedule because of a hiring freeze and staffing needs and that management required a full-time employee.

45.      Harjes characterized Peltier's request for accommodation as a request not to do her job. Specifically, Harjes stated:

[B]ut in the meantime you have to do the job that you're hired for. So I know that sounds really harsh, but we've gotten to the point where you don't have any more leave time to take so through the accommodation process, you can, you can continue to ask for accommodation, but an accommodation is designed for you, that will make it possible for you to do your job. So, you have to do your job, and we'll help you with that. But you have to do your job. It's not an accommodation. It's not how to not do your job, which is what you're essentially asking for. Like, I want an accommodation not to have to do my, to do more than 50% of my work.

46.    Peltier objected that she was asking for a temporary reduction in hours not to avoid her job, but, instead, to enable her to do her job while regaining stamina, which would in turn allow her to return to work full-time.

47.    Peltier also pointed out that PPNCS's delayed response to her request for accommodation was contributing to her attendance occurrences.

48.    During May 16–23, 2025,  Peltier missed several days due to health after being forced to work before her approved return and after being told partial days would be treated as absences.

49.    Peltier then worked on May 25 as scheduled.

50.    On June 2, 2025, PPNCS notified Peltier that she was selected for layoff effective on or around June 23, 2025.

51.    Based on seniority within the classification/location,  Peltier should not have been included in the layoff.

52.    One other individual, who is not known to be disabled, should have been selected ahead of  Peltier.

53.    PPNCS's HR, Harjes, later asserted in writing that there was "some confusion" and that  Peltier was "mistakenly included" in the layoff action.

7

54.     PPNCS remained unwilling to accommodate Peltier by allowing her a gradual return to full-time work.

55.     Peltier therefore missed several days of work from June 3 through June 13.

56.     Given PPNCS's threats of discipline towards Peltier while she was on approved medical leave, PPNCS's disparaging statements towards Peltier regarding her requests for disability accomodations, PPNCS's repeated refusal to provide medically supported accommodations, PPNCS's insistence on Peltier's full-time work despite documented short-term limitations, PPNCS forcing Peltier to return to work early contrary to medical advice, and PPNCS's subsequent improper selection of Ms. Peltier for layoff, Peltier was constructively discharged on June 14, 2025.

## CAUSES OF ACTION

### COUNT I: FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF THE ADA

57.     Plaintiff incorporates the allegations set forth above.

58.     The ADA mandates that employers provide reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A).

59.     Reasonable accommodations are modifications to the work environment, or to the manner or circumstances under which the position held is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position. 29 C.F.R. § 1630.2(o)(1)(ii).

60.    Reasonable accommodations include, but are not necessarily limited to, "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

61.    Prior to her discharge, Peltier was PPNCS's "employee" and PPNCS was Peltier's "employer" within the meaning of the ADA, 42 U.S.C. § 12111 (4)-(5).

62.    Peltier's Sjogrens Syndrome and Autonomic Dysfunction conditions are disabilties within the meaning of the ADA, 42 U.S.C. § 12102, because those conditions substantially limit one or more major life activities, including, but not limited to, sleeping, concentrating, thinking, communicating, walking, and standing, 42 U.S.C. § 12102(2)(A), as well as the operation of Pelter's neurological and cardiovascular functions, which are major bodily functions.  42 U.S.C. § 12102(2)(B).

63.    Peltier is a "qualified individual" with a disability under the ADA in that she could perform the essential functions of her position so long as she was provided reasonable accommodations, including temporary medical leave, a gradual return to work, and a temporary modified work schedule.  42 U.S.C. § 12111(8).  *See also Brannon v. Luco Mop Co.*, 521 F.3d 843, 849 (8th Cir. 2008) (recognizing medical leave as a reasonable accommodation).

64.    PPNCS was aware of Peltier's disability and need for disability related accomodations through her direct communications and medical documentation furnished by her healthcare provider.

65.     Peltier requested reasonable accommodations, including temporary medical leave, a gradual return to work, and a temporary modified work schedule supported by medical documentation.

66.     PPNCS refused to provide the requested accommodations and failed to propose effective alternatives that would enable Peltier to perform the essential functions of her position.

67.     By its conduct, PPNCS violated the ADA. 42 U.S.C. § 12112(b)(5)(A).

68.     As a direct and proximate result of PPNCS's conduct, Plaintiff has incurred and continues to incur damages, including but not necessarily limited to wage and benefit loss and emotional distress, in an amount in excess of $75,000.

**COUNT II: FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF THE MHRA**

69.     Plaintiff incorporates the allegations set forth above.

70.     The MHRA provides, "Except when based on a bona fide occupational qualification, it is an unfair employment practice for an employer with a number of part-time or full-time employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year . . . equal to or greater than 15 effective July 1, 1994 . . . not to make reasonable accommodation to the known disability of a qualified disabled person or job applicant . . . ." Minn. Stat. § 363A.08, subd. 6.

71.     Reasonable accommodations may include, but are not limited to, job restructuring, modified work schedules, reassignment to a vacant position, acquisition or

10

modification of equipment or devices, and the provision of aides on a temporary or periodic basis. Minn. Stat. § 363A.08, subd. 6.

72. Prior to her discharge, Peltier was PPNCS's "employee" and PPNCS was Peltier's "employer" within the meaning of the MHRA, Minn. Stat. § 363A.03, subds. 15, 16.

73. During all relevant times herein, PPNCS employed more than 15 employees.

74. Peltier's Sjogrens Syndrome and Autonomic Dysfunction are disabilities within the meaning of the MHRA because those conditions materially limit one or more major life activities, including, but not limited to, sleeping, concentrating, thinking, communicating, walking, and standing as well as the operation of Pelter's neurological and cardiovascular functions, which are major bodily functions.

75. Peltier is a "qualified individual" with a disability under the MHRA in that she could perform the essential functions of her position so long as she was provided reasonable accommodations, including temporary medical leave, a gradual return to work, and a temporary modified work schedule.  Minn. Stat. § 363A.03, subd. 36.

76. PPNCS was aware of Peltier's disability and need for disability related accomodations through her direct communications and medical documentation furnished by her healthcare provider.

77. Peltier requested reasonable accommodations, including temporary medical leave, a gradual return to work, and a temporary modified work schedule supported by medical documentation.

11

78.     PPNCS refused to provide the requested accommodations and failed to propose effective alternatives that would enable Peltier to perform the essential functions of her position.

79.     By its conduct, PPNCS violated the MHRA. Minn. Stat. § 363A.08, subd. 6.

80.     As a direct and proximate result of PPNCS's conduct, Plaintiff has incurred and continues to incur damages, including but not necessarily limited to wage and benefit loss and emotional distress, in an amount in excess of $75,000.

**COUNT III: DISCRIMINATORY DISCHARGE BECAUSE OF DISABILITY IN VIOLATION OF THE ADA**

81.     Plaintiff incorporates the allegations set forth above.

82.     The ADA prohibits employers from discriminating against qualified individuals on the basis of disability in regard to the discharge of employees, and other terms, conditions, and privileges of employment.  42 U.S.C. § 12112(a).

83.     Prior to her discharge, Peltier was PPNCS's "employee" and PPNCS was Peltier's "employer" within the meaning of the ADA, 42 U.S.C. § 12111 (4)-(5).

84.     PPNCS selected Peltier for layoff because of her disability in violation of the ADA.

85.     Peltier was constructively discharged because of her disability in violation of the ADA.

86.     By its conduct, PPNCS violated the ADA. 42 U.S.C. § 12112(a).

87. As a direct and proximate result of PPNCS's conduct, Plaintiff has incurred and continues to incur damages, including but not necessarily limited to wage and benefit loss and emotional distress, in an amount in excess of $75,000.

## COUNT IV: DISCRIMINATORY DISCHARGE BECAUSE OF DISABILITY IN VIOLATION OF THE MHRA

88. Plaintiff incorporates by reference the allegations set forth above.

89. The MHRA prohibits employers from discriminating against qualified individuals on the basis of disability in regard to the discharge of employees, and other terms, conditions, and privileges of employment.  Minn. Stat. § 363A.08, subd. 2.

90. Prior to her discharge, Peltier was PPNCS's "employee" and PPNCS was Peltier's "employer" within the meaning of the MHRA, Minn. Stat. § 363A.03, subds. 15, 16.

91. PPNCS selected Peltier for layoff because of her disability in violation of the MHRA.

92. Peltier was constructively discharged because of her disability in violation of the MHRA.

93. By its conduct, PPNCS violated the MHRA. Minn. Stat. § 363A.08, subd. 2.

94. As a direct and proximate result of PPNCS's conduct, Plaintiff has incurred and continues to incur damages, including but not necessarily limited to wage and benefit loss and emotional distress, in an amount in excess of $75,000.

## COUNT V: RETALIATORY DISCHARGE IN VIOLATION OF THE ADA

95. Plaintiff incorporates by reference the allegations set forth above.

13

96.     The ADA forbids employers from retaliating against an employee who asserts her rights under the ADA. 42 U.S.C. § 12203(a).

97.     Peltier engaged in conduct protected under the ADA.

98.     Peltier requested reasonable accommodations for her disability including temporary medical leave, a gradual return to work, and a temporary modified work schedule supported by medical documentation.

99.     PPNCS subjected Peltier to multiple adverse actions because of her protected conduct.

100.    PPNCS threatened to discipline Peltier if she failed to return on May 5 for a full eight-hour shift, despite approved leave through May 7.

101.    PPNCS made disparaging comments about Peltier, falsely characterizing her request for a temporary reduced schedule as an attempt to avoid job duties.

102.    PPNCS refused to provide Peltier reasonable accommodations, including a gradual return to full-time work supported by medical documentation, and failed to propose effective alternatives.

103.    PPNCS forced Peltier to immediately return to full-time work, contrary to medical advice, which worsened her health condition.

104.    PPNCS selected Peltier for layoff because she engaged in conduct protected by the ADA.

105.    Peltier was constructively discharged because she engaged in conduct protected by the ADA.

106.    By its conduct, PPNCS violated the ADA. 42 U.S.C. § 12203(a).

14

107.   As a direct and proximate result of PPNCS's conduct, Plaintiff has incurred and continues to incur damages, including but not necessarily limited to wage and benefit loss and emotional distress, in an amount in excess of $75,000.

### COUNT VI: REPRISAL IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

108.   Plaintiff incorporates by reference the allegations set forth above.

109.   The Minnesota Human Rights Act provides that it is an unfair discriminatory practice for any individual who participated in the discrimination as an employer, or as an employee or agent thereof, to intentionally engage in reprisal against any person who engages in protected conduct under the Minnesota Human Rights Act. Minn Stat. § 363A.15.

110.   Peltier engaged in conduct protected under the MHRA.

111.   Peltier requested reasonable accommodations for her disability including temporary medical leave, a gradual return to work, and a temporary modified work schedule supported by medical documentation.

112.   PPNCS subjected Peltier to multiple adverse actions because of her protected conduct.

113.   PPNCS threatened to discipline Peltier if she failed to return on May 5 for a full eight-hour shift, despite approved leave through May 7.

114.   PPNCS made disparaging comments about Peltier, falsely characterizing her request for a temporary reduced schedule as an attempt to avoid job duties.

15

115.   PPNCS refused to provide Peltier reasonable accommodations, including a gradual return to full-time work supported by medical documentation, and failed to propose effective alternatives.

116.   PPNCS forced Peltier to immediately return to full-time work, contrary to medical advice, which worsened her health condition.

117.   PPNCS selected Peltier for layoff because she engaged in conduct protected by the MHRA.

118.   Peltier was constructively discharged because she engaged in conduct protected by the MHRA.

119.   By its conduct, PPNCS violated the MHRA. Minn Stat. § 363A.15.

120.   As a direct and proximate result of PPNCS's conduct, Plaintiff has incurred and continues to incur damages, including but not necessarily limited to wage and benefit loss and emotional distress, in an amount in excess of $75,000.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Award Plaintiff all damages available under the ADA and MHRA, including compensatory and punitive damages;

B. Award Plaintiff her costs, disbursements, and reasonable attorney's fees; and

C. Grant any other legal or equitable relief the Court deems just and equitable.

Respectfully submitted,

Dated: April 20, 2026

*/s/ Nevada S. Sweitzer*
David H. Redden, #0391496
Nevada S. Sweitzer, #0505644
Attorneys for Plaintiff Jennifer Peltier
Fabian May & Anderson, PLLP
1625 Medical Arts Building
825 Nicollet Mall
Minneapolis, MN 55402
(612) 353-3340
dredden@fmalawyers.com
nsweitzer@fmalawyers.com